# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Janet Hankinson,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Douglas King, an individual; Eagle Brook Church of White Bear Lake, Minnesota, a Minnesota nonprofit corporation; and Spring Lake Baptist Church, an inactive Minnesota nonprofit corporation,<br><br>　　　　Defendant. | Case No. 14-cv-5105 (SRN/BRT)<br><br>**MEMORANDUM OPINION AND ORDER** |

Stuart S. Mermelstein, Herman Law, 3351 NW Boca Raton Blvd., Boca Raton, FL 33431; Michael A. Bryant, Bradshaw & Bryant PLLC, 1505 Division St., Waite Park, MN 56387, for Plaintiff.

Paul Engh, Paul Engh Law Office, 220 South 6th Street, Suite 1225, Minneapolis, MN 55402, for Defendant Douglas King.

Jason M. Stoffel and Timothy W. Waldeck, Waldeck Law Firm, P.A., 1400 TCF Tower, 121 South 8th Street, Minneapolis, MN 55402, for Defendant Eagle Brook Church of White Bear Lake, Minnesota.

SUSAN RICHARD NELSON, United States District Judge

## I.　　INTRODUCTION

　　This matter is before the Court on Defendant Eagle Brook Church of White Bear Lake's Motion to Dismiss [Doc. No. 5]. For the reasons set forth below, the Court denies this motion.

## II.  BACKGROUND

### A. The Parties and Plaintiff's Allegations of Abuse

Plaintiff brings suit against Defendants for alleged sexual abuse she experienced as a minor. Plaintiff Janet Kay Hankinson ("Plaintiff" or "Hankinson") resides in the State of Maryland. (Compl. ¶ 1 [Doc. No. 1].) Defendant Douglas Wayne King ("King") resides in the Commonwealth of Virginia. (Id. ¶ 2.) Defendant Spring Lake Park Baptist Church ("Spring Lake Park Baptist Church") is an inactive Minnesota Nonprofit Corporation with its principal place of business in the State of Minnesota. (Id. ¶ 3.) Defendant Eagle Brook Church of White Bear Lake, Minnesota ("Eagle Brook Church" or "Defendant") is a Minnesota Nonprofit Corporation with its principal place of business also in the State of Minnesota. (Id. ¶ 5.) Plaintiff alleges that the Court has diversity jurisdiction, and also alleges that venue in this District is proper because the events giving rise to this claim allegedly occurred in Minnesota. (Id. ¶¶ 6–7.)

Hankinson claims that around the Spring of 1975, Spring Lake Park Baptist Church hired King as a Youth Pastor. (Id. ¶ 10.) From 1975 to 1977, King led a youth group at Spring Lake Park Baptist Church. (Id. ¶ 8.) Plaintiff claims that while she was a member of this youth group, King repeatedly sexually assaulted her. (See id. ¶¶ 12–19, 23.) King allegedly admitted to Anoka County police that he had sexual intercourse with Hankinson on multiple occasions while she was a minor. (Id. ¶ 15.)

Hankinson alleges that during a youth group bicycle trip in 1975, a church volunteer witnessed Hankinson exiting King's tent at approximately 3:00 am. (Id. ¶ 20.) The volunteer allegedly informed Spring Lake Park Baptist Church administrative

officials, Board of Directors, Deacons, and the church's Pastor about this incident. (Id. ¶¶ 21–22.) Despite the church leadership's knowledge about this incident, Plaintiff claims "nothing was done about the inappropriate relationship" between King and Hankinson. (Id. ¶ 23.)

Upon information and belief, Plaintiff alleges that Spring Lake Park Baptist Church was absorbed into Eagle Brook Church in a de facto merger in 2009. (See id. ¶¶ 38, 42.) Eagle Brook Church allegedly "continued the missions and ministry of the Spring Lake Park Baptist Church with a continuity of management, personnel, physical location, assets, records and general business operations." (Id. ¶ 40.) As a result of this merger, Spring Lake Park Baptist Church ceased all independent operations and the State of Minnesota involuntarily dissolved the church on January 21, 2009. (Id. ¶ 42.)

### B. Plaintiff's Claims

Plaintiff alleges three claims in her Complaint. In Count I, she alleges sexual assault and battery against King. (See id. ¶¶ 24–27.) In Count II, Hankinson claims that Spring Lake Park Baptist Church was negligent by failing to "use reasonable care to insure [her] safety, care, well-being and health . . . while she was under the care, custody or in the presence of the Church." (See id. ¶¶ 28–36.) Finally, in Count III, Plaintiff alleges that as a result of the de facto merger between Spring Lake Park Baptist Church and Eagle Brook Church, Eagle Brook Church assumed all of the liability and obligations of Spring Lake Park Baptist Church; and thus, Eagle Brook Church is liable for the negligence of its acquired entity, Spring Lake Park Baptist Church. (See id. ¶¶ 41, 43.)

3

### C. Procedural Posture

On February 2, 2015, Eagle Brook Church filed a Motion to Dismiss [Doc. No. 5] with a supporting memorandum [Doc. No. 7]. Eagle Brook Church argues that the Court should dismiss Plaintiff's Count III because the de facto merger doctrine does not apply to nonprofits in Minnesota; and therefore, Hankinson's claim against Eagle Brook Church fails as a matter of law. (See Def.'s Mem. at 2 [Doc. No. 7].) On March 9, 2015, Plaintiff filed a response brief [Doc. No. 20], and Defendant filed a reply on March 20, 2015 [Doc. No. 23]. The Court heard oral argument on Defendant's motion on May 29, 2015.

## III. DISCUSSION

### A. Standard of Review

Defendant moves to dismiss Plaintiff's Count III, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d); Gorog v. Best Buy Co., 760 F.3d 787, 791 (8th Cir. 2014); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court

may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

### B. Plaintiff's Count III: Eagle Brook Church's Successor Liability

Defendant's argument about the inapplicability of the de facto merger doctrine to nonprofits is two-fold. First, Eagle Brook Church contends that the Minnesota de facto merger doctrine *never* applied to nonprofit corporations. (See Def.'s Mem. at 4 [Doc. No. 7].) Second, Defendant argues that, even if the doctrine once applied to nonprofits in the past, in 2006, the Minnesota Legislature abolished the de facto merger doctrine in all contexts that it once existed. (See id. at 8.) The Court addresses both of these arguments below.

5

## 1. Evolution of Minnesota's De Facto Merger Doctrine

Minnesota's de facto merger doctrine has evolved significantly over the past forty years. In J.F. Anderson Lumber Co. v. Myers, the Minnesota Supreme Court explained that traditional successor law provides that:

> where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

See 206 N.W.2d 365, 368–69 (1973) (citing Forest Labs., Inc. v. Pillsbury Co., 452 F.2d 621 (7th Cir. 1971)). Although the Minnesota Legislature did not expressly adopt the de facto merger exception to successor liability, the doctrine developed through the common law. See, e.g., Niccum v. Hydra Tool, 438 N.W.2d 96, 98 (Minn. 1989); T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn., 840 F. Supp. 676, 678 (D. Minn. 1993).

In order to determine whether a de facto merger had occurred, Minnesota courts would consider whether the following four factors existed:

> (1) continuity of management, personnel, assets and operations; (2) continuity of shareholders which result[ed] from the purchasing corporation paying for the acquired assets with shares of its own stock; (3) . . . the seller cease[d] operations, liquidate[d], and dissolve[d] as soon as legally and practically possible; and (4) . . . the purchasing entity assume[d] the obligations of the seller necessary for uninterrupted continuation of business operations.

T.H.S. Northstar Assocs., 840 F. Supp. at 678 (citing Keller v. Clark Equip. Co., 715 F.2d 1280, 1291 (8th Cir. 1983); Soo Line R. Co. v. B.J. Carney & Co., 797 F. Supp. 1472, 1483 (D. Minn. 1992)); Sylvester Bros. Dev. Co. v. Burlington N. R.R., 772 F.

Supp. 443, 447–48 (D. Minn. 1990); see Source One Enterprises, L.L.C. v. CDC Acquisition Corp., No. 02-cv-4925 (PAM/RLE), 2004 WL 1453529, at *4 (D. Minn. June 24, 2004). As evidenced by the "continuity of shareholders" requirement, these four factors were formulated with the merger of for-profit corporations in mind. This is unsurprising since every plaintiff who brought suit, alleging a de facto merger had occurred, sued only for-profit entities, such as business corporations and limited liability companies (LLCs). See, e.g., Sylvester Bros. Dev. Co., 772 F. Supp. at 447; State v. Gopher Oil Co. v. Bunker, No. C1-95-738, 1995 WL 687688, at *3 (Minn. Ct. App. Nov. 21, 1995) (holding that two corporations "effected a de facto merger"); T.H.S. Northstar Assocs., 840 F. Supp. at 678 (same).

Under the four-factor test, a court is not required to find each of the four elements present to conclude that a de facto merger occurred. See id. Nonetheless, Minnesota courts generally require that the "continuity of shareholders" element exists. See id.; Sylvester Bros. Dev. Co., 772 F. Supp. at 448. As the Minnesota Supreme Court explained in Niccum v. Hydra Tool Corp., "[i]f there is no continuation of the corporate entity – shareholders, stock, and directors – the successor corporation is not liable." See 438 N.W.2d 96, 99 (Minn. 1989); Fine v. Schwinn Cycling Fitness, Inc., No. C3-00-1079, 2000 WL 1869552, at *2 (Minn. Ct. App. Dec. 26, 2000) (explaining that because the two companies did not exchange stock, a de facto merger did not occur). Whether a continuity of shareholders exists is "[t]he key factor in distinguishing between a merger and an asset purchase," because a mere asset purchase results in the exchange of cash for assets, rather than stock for assets. T.H.S. Northstar Assocs., 840 F. Supp. at 678.

7

Although Minnesota state courts had applied the de facto merger doctrine for years, the Minnesota Legislature abolished this common law doctrine in 2006, in the context of for-profit corporations, see Minn. Stat. § 302A.661, subd. 4, and LLCs, see Minn. Stat. § 322B.77, subd. 4. The Legislature adding the following sentences to the statute governing successor liability for business corporations:

> A disposition of all or substantially all of a corporation's property and assets under this section is not considered to be a merger or a de facto merger pursuant to this chapter or otherwise. The transferee shall not be liable solely because it is deemed to be a continuation of the transferor.

Minn. Stat. § 302A.661, subd. 4. Nearly identical language was also added to the statute governing successor liability for LLCs. See Minn. Stat. § 322B.77, subd. 4. In the Reporter's Notes for the Minnesota Business Corporations Act, Professor John H. Matheson emphasized that the newly added sentences were designed to "confirm elimination of any common law exceptions [to successor liability], such as those employed under the rubrics of de facto merger or continuation of the transferor theories." See id., Reporter's Notes 2006. Professor Matheson explained that these additions clarify "that a purchase of all or substantially all of a corporation's assets is not a de facto merger and that the buyer is not liable for the seller's obligations solely because the buyer is deemed to be a continuation of the seller." Id.

Minnesota courts have recognized that the 2006 amendments abolished the de facto merger doctrine as applied to business corporations and LLCs. See Quinn v. Elite Custom Transporters & Motorcoaches, LLC, No. 10-cv-118 (MJD/AJB), 2011 WL 1869391, at *9 (D. Minn. May 16, 2011) (explaining that the Reporter's Notes "make it

8

clear that beyond the above described exceptions, there are no common law exceptions to the rule that a transferee of corporate assets is not liable for the debts of the predecessor."); Matson Logistics, LLC v. Smiens, No. 12-cv-400 (ADM/JJK), 2012 WL 2005607, at *9 (D. Minn. June 5, 2012) (noting that "the amended statutory language of Minn. Stat. § 302A.661 clearly abrogates the common law exceptions of de facto merger and mere continuation"). The parties note that they were unable to find any Minnesota case, at the trial or appellate level, which involved the application of the de facto merger doctrine to nonprofits. (See Def.'s Mem. at 4 [Doc. No. 7]; Pl.'s Mem. at 4 [Doc. No. 20].) The Court was similarly unable to find any relevant case law on this subject.

### 2. De Facto Merger Doctrine Applies to Nonprofit Corporations

Eagle Brook Church interprets this void in Minnesota case law, especially pre-2006, as evidence of the fact that the de facto merger doctrine never applied to nonprofits. (See Def.'s Mem. at 6 [Doc. No. 7].) Specifically, Defendant argues that because nonprofits do not have shareholders, nonprofits cannot, by necessity, satisfy the the "continuity of shareholders" element of the de facto merger test; and thus, the de facto merger doctrine never applied to nonprofits. (See id.) The Court disagrees.

While Minnesota courts have required for-profit corporations to prove "continuity of shareholders" in order for the de facto merger doctrine to apply, Minnesota courts have not had the opportunity to consider how the four-factor test would change when applied to nonprofit corporations.[1] The Minnesota Supreme Court recently reiterated its long-

---

[1] Defendant claims that "it is reasonable to assume" that Minnesota courts had "various opportunities" to determine that the doctrine applied to nonprofits, but the

9

standing principle that, "[w]hen [its] jurisprudence is undeveloped in an area, as it is here, [it] often consider[s] case law from other jurisdictions for guidance." State ex rel. Swanson v. 3M Co., 845 N.W.2d 808, 814 (Minn. 2014) (citing Gordon v. Microsoft Corp., 645 N.W.2d 393, 402 n.9 (Minn. 2002)). Accordingly, the Court turns to case law from other jurisdictions on this subject.

Courts in other jurisdictions have re-interpreted the "continuity of shareholders" requirement as a "continuity of ownership," or "continuity of control" requirement. See, e.g., United States v. Davis Mem'l Hosp., 956 F.2d 1163, *3 (4th Cir. 1992) (holding that a de facto merger did not occur between two nonprofits because, among other reasons, the two organizations "were at all times governed by separate boards and the personnel of [the two hospitals] were never fully consolidated"); Crawford Harbor Assocs. v. Blake Const. Co., 661 F. Supp. 880, 884 (E.D. Va. 1987) (explaining that the de facto merger exception test requires a "continuity of ownership").

While some courts merely reinterpret the "continuity of shareholders" requirement, other courts have held that this element is simply not applicable when determining whether a de facto merger occurred between two nonprofits. See, e.g., Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals, 873 F. Supp. 2d 288, 324 (D.D.C. 2012) (explaining that although one of the factors of the de facto merger test is usually "continuity of ownership," that factor is "not applicable to nonprofit

---

Minnesota Supreme Court and the Minnesota Court of Appeals affirmatively declined to do so. (See Def.'s Reply at 4 [Doc. No. 23].) The Court disagrees. The fact that *no* case law exists on this subject, including case law determining that the doctrine does not apply to nonprofits, is evidence that Minnesota courts have *not* had the opportunity to determine whether, and how, the doctrine applies to nonprofits.

10

corporations"); J.G.M.C.J. Corp. v. C.L.A.S.S., Inc., 924 A.2d 400, 406, 458 (N.H. 2007) (noting that although the de facto merger test regularly requires "continuity of shareholders," "[t]he fact-finder may look to other factors indicative of commonality;" and holding, that the "continuity of shareholders" factor is irrelevant when determining whether two nonprofits merged). Whether the "continuity of shareholders" element is reinterpreted, or it is simply eliminated from the four-factor test, courts outside Minnesota have consistently held that one nonprofit may be absorbed by another nonprofit in a de facto merger.

Using this case law as guidance, the Court finds that the de facto merger doctrine may apply to the two nonprofit Defendants in this case, even though the corporations do not have shareholders. Whether the "continuity of ownership" alternative applies, or the "continuity of shareholders" requirement does not apply at all in the context of nonprofit merger, Plaintiff sufficiently alleges that "a continuity of management and personnel" exists between Spring Lake Baptist Church and Eagle Brook Church.[2] (See Compl. ¶¶ 38, 40 [Doc. No. 1].) Therefore, the Court finds that the de facto merger doctrine may still apply to nonprofits even though nonprofits do not have shareholders.

---

[2] Defendant summarily argues that "the facts in this case bear out that Plaintiff could never fulfill the elements of the [de facto merger] doctrine" because "apart from the conclusory allegations" in the Complaint, Hankinson did not identify any evidence to support a de facto merger. (See Def.'s Reply at 2 & n.2 [Doc. No. 23].) The Court disagrees. Plaintiff sufficiently alleges facts in her Complaint demonstrating continuity in management, personnel, and ownership between Spring Lake Baptist Church and Eagle Brook Church. At this stage of the litigation, Plaintiff has alleged more than "mere conclusory statements." See Iqbal, 556 U.S. at 678. The facts alleged in her Complaint "raise a reasonable expectation that discovery will reveal evidence" of a de facto merger between Spring Lake Baptist Church and Eagle Brook Church. See Twombly, 550 U.S. at 556.

### 3. Abrogation of De Facto Merger Doctrine for Business Corporations and LLCs Does Not Apply to Nonprofits

In addition to arguing that the de facto merger doctrine cannot apply to nonprofits because nonprofit corporations do not have shareholders, Eagle Brook Church also argues that Plaintiff's claim fails because the Minnesota Legislature "abolished the common law de facto merger doctrine where it once did exist." (See Def.'s Mem. at 8 [Doc. No. 7].) Specifically, Defendant claims that because the Minnesota Legislature expressly eliminated the doctrine as it applied to for-profit corporations and LLCs in 2006, "it is abundantly clear that where the common law de facto merger doctrine once applied in the past, it is now abolished." (See id. at 11.) In opposition, Plaintiff argues that because the Legislature only expressly abrogated the doctrine as it applied to for-profit corporations and LLCs, "[u]nder the principles of statutory construction, it must be concluded that the Legislature declined to abrogate the common law doctrine of de facto merger with respect to nonprofit organizations." (See Pl.'s Mem. at 8 [Doc. No. 20].) The Court agrees with Plaintiff.

As the Court explained in more detail above, in 2006, the Minnesota Legislature abolished this common law doctrine in the context of for-profit corporations, see Minn. Stat. § 302A.661, subd. 4, and LLCs, see Minn. Stat. § 322B.77, subd. 4. The Legislature did so by adding two sentences, which clarified that the transfer of a corporation's assets or property to another company is not considered a de facto merger, and the transferee cannot be held liable "solely because it is deemed to be a continuation of the transferor." See id.; Minn. Stat. § 302A.661, subd. 4.

12

Although this clarifying language was added to the transferee liability provisions in the Minnesota Business Corporations Act and the Minnesota Limited Liability Companies Act, no such language was added to the Minnesota Nonprofit Corporations Act, which provides the procedural requirements for mergers and consolidations of nonprofit corporations under Minnesota law. See Minn. Stat. § 317A.601–671. According to the transferee liability provision in the Minnesota Nonprofit Corporations Act, a "[nonprofit] transferee is liable for the debts, obligations, and liabilities of the [nonprofit] transferor only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state." See Minn. Stat. § 317A.661, subd. 5. Before the 2006 amendments were added to the Business Corporations and Limited Liability Companies Acts, the transferee liability provisions in these two statutes included the exact same language that currently comprises the transferee liability provision in the Nonprofit Corporations Act. And, as the Court explained above, pre-2006, Minnesota courts interpreted that language as permitting application of the de facto merger exception to successor liability. Thus, the transferee liability provision in the Nonprofit Corporations Act merely states the general successor liability rule, but, unlike the other statutes, it does not explicitly limit the application of common law exceptions, such as the de facto merger doctrine.

"Generally, statutes in derogation of the common law are to be strictly construed." Rosenberg v. Heritage Renovations, LLC, 685 N.W.2d 320, 327 (Minn. 2004) (citing Shaw Acquisition Co. v. Bank of Elk River, 639 N.W.2d 873, 877 (Minn. 2002); Bloom v. Am. Express Co., 23 N.W.2d 570, 573 (Minn. 1946)). Based on this rule, the

13

Minnesota Supreme Court has held that "[w]hen a statute which is intended to make an innovation upon the common law is susceptible of more than one construction, it is not to be construed as altering the common law further than the language of the statute clearly and necessarily requires." Kelly v. First Minneapolis Trust Co., 226 N.W. 696, 696 (Minn. 1929). Applying this principle to the facts of this case, the Court holds that the language in Minn. Stat. § 302A.661, subd. 4, and Minn. Stat. § 322B.77, subd. 4, which abrogates the common law de facto merger doctrine for business corporations and LLCs, must not be construed further than the text necessarily requires.

Moreover, according to Minn. Stat. § 645.16, "[w]hen the words of a law are not explicit, the intention of the legislature may be ascertained by considering . . . other laws upon the same or similar subjects." See Minn. Stat. § 645.16(5); see Milner v. Farmers Ins. Exch., 748 N.W.2d 608, 617 (Minn. 2008) (stating that "[i]n the absence of any plain language" covering the subject matter of the case, the court should look to "other related statutes for guidance"). Here, the Minnesota Nonprofit Corporation Act does not explicitly state that the de facto merger doctrine remains a valid exception to the general rule governing successor liability. Nonetheless, when looking to "other related statutes," such as the Business Corporations Act and the Limited Liability Companies Act, the Court notes that where the Legislature wanted to make expressly clear that the de facto merger doctrine was abolished, it did so. Therefore, by *not* including any language that limits the application of the de facto merger doctrine in the Minnesota Nonprofit Corporation Act, the Legislature likely did not intend to limit the common law doctrine

14

as applied to nonprofits.[3] Accordingly, the Court finds that the common law doctrine was only abrogated as applied to business corporations and LLCs, but was not abrogated as applied to nonprofit corporations.

The Court's finding in this case is bolstered by the equitable principles underlying successor liability. See Johns v. Harborage I, Ltd., 664 N.W.2d 291, 302 (Minn. 2003) (explaining that the "successor-employer doctrine in the federal common law is an equitable doctrine and has only been in force when there are equitable principles supporting that"); Korlin v. Chartwell Health Care, Inc., 128 F. Supp. 2d 609, 613 (E.D. Mo. 2001) (explaining that "[t]he doctrine of successor liability is derived from equitable principles, and fairness is the prime consideration in application of the doctrine"). Pursuant to these equitable principles, a district court in this Circuit explained that "[i]t would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the successor did not have the

---

[3] The Court notes that Minn. Stat. § 480.065 empowers the Minnesota Supreme Court to answer a question of law certified to it by a federal court, if the answer is determinative of an issue in pending litigation and there is no controlling appellate decision, constitutional provision, or state statute. See Minn. Stat. § 480.065, subd. 3. However, the Court finds that certification is unnecessary in this instance. As the Eighth Circuit explained in Hatfield v. Bishop Clarkson Mem'l Hosp., "[f]ederal courts entertaining cases under their diversity jurisdiction should not mechanically certify all difficult state law questions." See 679 F.2d 1258, 1261 n.4 (8th Cir. 1982) on reh'g sub nom., 701 F.2d 1266 (8th Cir. 1983) (citing Lehman Bros v. Schein, 416 U.S. 386, 390–91 (1974); Barnes v. Atl. & Pac. Life Ins. Co. of Am., 514 F.2d 704, 705 n.4 (5th Cir. 1975); Meredith v. Winter Haven, 320 U.S. 228 (1943) (explaining that a federal court sitting in diversity jurisdiction may not remit a plaintiff to state court merely because of difficulty in ascertaining the controlling state law)). The Court finds that the state law question in this case may be answered by carefully comparing the transferee liability provisions in the Minnesota Nonprofit Corporations Act to its analogues in the Business Corporations and Limited Liability Companies Acts.

opportunity to protect itself." See id. For this reason, the United States Supreme Court has emphasized that when successor liability questions arise, it "is especially appropriate" for a court to analyze the "facts of each case." See Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO, 417 U.S. 249, 256 (1974).

The facts alleged in this case demonstrate that Eagle Brook Church was not an "innocent purchaser" that did not have the opportunity to protect itself. Cf. Korlin, 128 F. Supp. 2d at 613. Here, Hankinson alleges that (1) Spring Lake Baptist Church administrative officials, Board of Directors, and Deacons knew about the alleged sexual abuse, and (2) the management and personnel remained the same when Spring Lake Baptist Church was absorbed by Eagle Brook Church. (See, e.g., Compl. ¶¶ 21, 40 [Doc. No. 1].) Accordingly, assuming that the facts alleged in Plaintiff's Complaint are true and drawing all reasonable inferences in favor Hankinson, Morton, 793 F.2d at 187, the leadership at Eagle Brook Church knew about the abuse Hankinson sustained. Therefore, principles of equity and fairness favor imposing successor liability on Eagle Brook Church.[4]

The Court also notes that, in general, successor liability doctrine seeks to strike a balance between the importance of encouraging "the free transferability of firms[' assets]," Mark J. Roe, Mergers, Acquisitions, and Tort: A Comment on the Problem of

---

[4] Insofar as Plaintiff argues that the intent of the 2013 amendments to the Child Victims Act, Minn. Stat. § 541.073 *et. seq.*, also counsel in favor of applying the de facto merger doctrine to nonprofits (see Pl.'s Mem. at 7 [Doc. No. 20]), the Court disagrees. Although the Child Victims Act was amended in 2013 to extend the statute of limitations for damages actions based on sexual abuse of a minor, the amendments did not at all concern the validity of suits brought against new corporate entities that merged with alleged tortfeasors.

16

Successor Corporation Liability, 70 Va. L. Rev. 1559, 1562 (1984), and the importance of providing an equitable remedy for tort victims. See Korlin, 128 F. Supp. 2d at 613 (citing Golden State Bottling Co., Inc. v. NLRB, 414 U.S. 168, 181 (1973); Leib v. Georgia–Pacific Corp., 925 F.2d 240, 247 (8th Cir. 1991)). By significantly limiting successor liability in the context of business corporations and LLCs, the State of Minnesota curbs concerns that successor liability may "be affecting, and possibly stymieing, asset sales." See Roe, Mergers, Acquisitions, and Tort, 70 Va. L. Rev. at 1561.

However, as one district court in Wisconsin described, the free transferability of assets in the pursuit of profits is not as concerning in the context of nonprofit organizations merging. See Gallenberg Equip., Inc. v. Agromac Int'l, Inc., 10 F. Supp. 2d 1050, 1056 (E.D. Wis. 1998) aff'd, 191 F.3d 456 (7th Cir. 1999). In Gallenberg, the court explained that "[t]he policies underlying the no successor liability principle are geared toward encouraging economic actors to function effectively in a market economy and have no application in the context of non-profit and non-stock organizations." See id. Thus, continuity of stock ownership is less significant, if at all relevant, when analyzing the applicability of the de facto merger doctrine as applied to nonprofits. Defendant aptly notes that some nonprofits "are greatly attuned to . . . how negotiated transactions and contracts will affect their bottom lines," and, similar to for-profits, have an interest in functioning effectively in a market economy. (See Def.'s Reply at 6 [Doc. No. 23].) The Court does not disagree. Rather, the Court finds that the value placed on the free transferability of assets in the pursuit of profits is more substantial in the for-profit

17

context. In sum, the Court finds that, in 2006, the Minnesota Legislature did not abolish the de facto merger doctrine as applied to nonprofits. Therefore, Hankinson plausibly alleges that under the doctrine of de facto merger, Eagle Brook Church is liable for the negligence of its acquired entity, Spring Lake Baptist Church.

## IV. ORDER

Based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant Eagle Brook Church of White Bear Lake's Motion to Dismiss [Doc. No. 5] is **DENIED**, as detailed herein.


Dated: July 27, 2015                s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Judge